Francis H. AMEEL, Administrator d.b.n. Estate of Mary E. Ameel, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 19983.

United States Court of Appeals, Sixth Circuit.

June 3, 1970.

J. Leon Katz, Detroit, Mich., for appellant.

Richard Farber, Dept. of Justice, Washington, D. C., (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee. James H. Brickley, U. S. Atty., Detroit, Mich., of counsel.

Before CELEBREZZE and COMBS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of Michigan granting the Government's motion to dismiss for lack of jurisdiction over the subject matter. The Appellant seeks refund of federal estate taxes alleged to have been erroneously assessed and collected against the estate. Section 7422 of the Internal Revenue Code of 1954, 26 U.S.C. § 7422 (1964). The District Court granted Appellee's motion to dismiss the action on the grounds that the Appellant's claim for refund was not filed within the applicable statute of limitations, Sections 6511(a) and (b) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6511(a) and (b), and hence the Court was without jurisdiction over the subject matter. 26 U.S.C. § 7422 (1964), 28 U.S.C. § 1291 (1964).

The relevant facts in the case were stipulated and are as follows:

The decedent, Mary E. Ameel, died on May 19, 1959. Thereafter Mary A. Peltier was appointed executrix of her estate. As executrix, Mrs. Peltier filed a timely estate tax return on behalf of the estate and remitted the tax payable as reported thereon with the filing of the return. Thereafter, the estate tax return was the subject of an audit by an Internal Revenue agent. The agent determined that certain of the assets in the estate had been undervalued on the estate tax return as filed. The agent recomputed the amount of estate tax based on the value of the assets as determined by him. The agent computed additional taxes due in the amount of $5,339.80, and presented this computation to Mrs. Peltier. Mrs. Peltier agreed with the agent that the additional taxes were due, signed a Treasury Form 890, which had been prepared by the Internal Revenue agent and, after the amount of additional interest from the date the return was due to February 7, 1963, had been computed, presented the Internal Revenue agent with a check for the total amount of taxes and interest due. At the time that she remitted the check to the agent, Mrs. Peltier did not intend to contest the correctness of the agent's determination. On receipt of the check, the Internal Revenue agent prepared a Treasury Form 1962. On the Form 1962, the agent instructed that the amount paid be immediately assessed.[1] Thereafter the check was processed and the additional taxes plus interest which had been owed by the estate of Mary Ameel were listed on the next assessment roll, which was signed February 21, 1963.

Sometime thereafter, Mary Peltier's brother, Francis H. Ameel, Appellant herein, formed the opinion that the assets had been correctly valued on the estate tax return as originally filed. Mr. Ameel was unable to persuade his sister to file a claim for refund so it was necessary for him to be appointed administrator of the estate before the claim for refund could be filed. On February 9, 1965, Mary Peltier was discharged as executrix of the estate and taxpayer was appointed administrator de bonis non.

---

1. It was further stipulated by the parties that the Advance Payment Record, Form 1962, may be used to instruct the Auditing Department to cash a check and hold it as a cash bond, notifying the taxpayer that he may have "his money returned to him at any time upon his request and that in the event the remittance exceeds any tax liability later found to be due he will not receive interest on the excess payment," Stipulation of Facts No. 9; Exhibit B, Advance Payment Record, lines 9–12. As noted above, the agent did not instruct the Auditing Department to proceed in this manner.

On that same date, taxpayer filed a claim for refund of the taxes remitted February 7, 1963.

These facts give rise to a single issue: whether the refund claim filed by Appellant on February 9, 1965 was timely under the applicable sections of the Internal Revenue Code of 1954. 26 U.S.C. §§ 6511(a) and (b), 7422 (1964), which provide:

Civil actions for refund of taxes paid shall not

"be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected * * until a claim for refund or credit has been duly filed."

A claim for refund must comport with the requirements of Section 6511(a) and (b) of the Internal Revenue Code of 1954 to be considered as "duly filed." Those sections, in part, state:

"(a) Period of Limitation on Filing Claim.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, * * *.

"(b) Limitation on Allowance of Credits and Refunds. (1) Filing of claim within prescribed period.—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection(a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period." 26 U.S.C. § 6511(a) and (b) (1964).

Applying these statutory commands to the stipulated facts, there is no question that the claim for refund (February 9, 1965) was filed more than three years after the return (August, 1960) was filed. The only issue which remains is whether the claim for refund was filed within "2 years from the time the tax

was paid." The Government contends that the date of payment should be measured from February 7, 1963 (the date of remittance and of the filing of Form 1962), and that the aforequoted statutes bar any civil action for refund brought after February 7, 1965. Hence, the instant claim filed on February 9, 1965 would be untimely. On the other hand, the Appellant contends that the date of payment was February 21, 1963 (the date of formal assessment), making the refund claim of February 9, 1965 within "2 years from the time the tax was paid." 26 U.S.C. § 6511 (1964).

In general, a tax is considered "paid" for purposes of the running of the period of limitations when a taxpayer files his return, accompanied by his payment. This is in accord with the United States Supreme Court's instructions that the words "payment of such tax" in the context of the predecessor section to the instant statutory framework should be given the meaning "these words ordinarily convey." Rosenman v. United States, 323 U.S. 658, 661, 65 S.Ct. 536, 89 L.Ed. 535 (1945). On the other hand, where there is no tax liability computed and proposed, a remittance is to be treated as a cash bond to stop the running of interest on the amount "dumped," Busser v. United States, 130 F.2d 537 (3d Cir. 1942), or deposited until a more definite determination of tax liability is asserted by the Government. Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L. Ed. 535 (1945). In such cases, "payment" occurs when the indefinite tax liability is further defined; such as by a formal assessment of a definite amount.

The instant case presents a factual pattern which falls between the standard patterns of the good faith filing of a return to pay a computed liability and the depositing of funds to stop the running of interest on an undefined tax liability. This action is unlike the case of the taxpayer filing his return because the deficiency is computed and proposed by a government agent rather than by the taxpayer himself, hence increasing the likelihood the taxpayer will contest the

proposed deficiency. Also, it is unlike the *Rosenman* case in which funds were deposited solely to stop the running of interest. In that case the parties stipulated, in effect, that a defined tax liability would not take place until assessment.[2]

The Appellant contends that a remittance in response to a proposed deficiency is a cash bond which may not constitute payment until the tax is defined by assessment. Thomas v. Mercantile National Bank, 204 F.2d 943 (5th Cir. 1953); United States v. Dubuque Packing Co., 233 F.2d 453 (8th Cir. 1956). However, a number of courts construed certain dicta[3] in Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), to suggest that payment may be effected prior to a formal assessment where the Government asserts and the taxpayer discharges, without contest, what he deems to be a liability. Fortugno v. Commissioner of Internal Revenue, 353 F.2d 429, 435 (3d Cir. 1965); Lewyt Corp. v. Commissioner of Internal Revenue, 215 F.2d 518 (2d Cir. 1954), aff'd in part and rev'd in part, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955); Charles Leich & Co. v. United States, 329 F.2d 649, 165 Ct.Cl. 127 (1964).

■ A review of these cases indicates that a number of factors determine what constitutes "payment." As Mertens, Law of Federal Income Taxation states:

> "This much is clear: (1) a remittance is not per se 'payment' of the tax; (2) a remittance that does not satisfy an asserted tax liability should not be treated as the 'payment' of a tax; and (3) an essential factor in 'payment' before assessment is the satisfaction or discharge of what the taxpayer deems a liability." Mertens, supra, Vol. 10, § 58.27 at 79 (1964 ed.)

These factors coalesce in the instant case. The Appellant made a remittance; it was in response to a proposed deficiency asserted by the Government; and it was made with the Appellant intending to satisfy a proposed deficiency and discharge any further tax liability. We find, therefore, that the voluntary remittance by Appellant effected on February 7, 1963 with intent to satisfy a proposed deficiency actually calculated by a revenue agent is payment within the meaning of Section 6511 of the Internal Revenue Code of 1954. 26 U.S.C. § 6511 (1964).

Our determination of payment of February 7, 1963 is buttressed by the information conveyed to the Auditing Department on Treasury Form 1962. As indicated on the face of the Advance Payment Record, (Exhibit B), the Auditing Department was instructed to immediately assess the amount of the advance payment received (line 8), rather than treat it as a cash bond (lines 9 and 10) or as a deposit pending classification (line 11). This factor reaffirms the parties' stipulation that the estate administrator intended to discharge the proposed deficiency, rather than post a returnable cash bond as was the case in *Rosenman*.

Further, existing Revenue Procedures asserted the importance of similar factors in the making of advance payments. Revenue Procedure 63–5 announces a purpose of "invit[ing] voluntary payment of agreed deficiencies" by "examining officers of the Internal Revenue Service." Such payments to be made "by taxpayer as soon as the examination has been completed and a firm figure for a proposed deficiency or additional tax has been determined." Revenue Procedure 63–5, §§ 1, 2 and 3; 26 C.F.R. 601.105. Revenue

---

2. In *Rosenman*, the parties stipulated that the Collector of Internal Revenue hold the remittance in a suspense account and presumably was required to return the full remittance if a request was made prior to assessment. 323 U.S. at 659–660, 65 S.Ct. 536. See Mertens, infra at 79.

3. In explaining their decision that Rosenman's remittance was not payment until assessed, the United States Supreme Court observed: "But * * * the taxpayer did not discharge what he deemed a liability nor pay one that was asserted." 323 U.S. at 662, 65 S.Ct. at 538.

Procedure 63–11 further explains that such advance payments will "be assessed upon receipt or as soon thereafter as is practicable, [unless] * * * the District Director is unable to ascertain the amount of the deficiency at the time payment is received." Revenue Procedure 63–11, §§ 4.02 and 4.03; 26 C.F.R. 601, 602.

These Revenue Procedures do not require any final determination of tax liability by a District Director for an advance payment to be made. Revenue Procedure 63–5 does not mention the District Director in defining "advance payments." Revenue Procedure 63–11 provides only that the District Director be "in a position to ascertain the amount of the deficiency," Revenue Procedure 63–11 at 4.02, "at the time the [advance] payment is received," Revenue Procedure 63–11 at 4.03. In that an examining agent, and not the District Director, is present when advance payments are received, we may fairly infer that where an examining agent actually computes and proposes a final deficiency, the concomitant payment by the taxpayer is treated as payment of an ascertainable amount of tax. Only when an examining agent estimates or approximates the tax liability, rather than computing and ascertaining a proposed deficiency, is the payment of the taxpayer treated by the Internal Revenue Department as a cash bond. The instant case involves the advance payment of a computed and proposed tax liability, not the remittance of an estimated or approximated tax liability.

The Appellant also contends that the instant advance payment was merely a deposit because the Internal Revenue Service's acceptance of it does not bar further assessments. The ability of the Government to assert additional assessments however, is granted to it by statute, Section 6204(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6204(a) (1964), and may be cut off only by applicable statutory limitations on further assessment. E. g. Section 6501 of the Internal Revenue Code of 1954; 26 U.S.C. § 6501 (1964). Even a formal assessment or a final determination by the District Director of a proposed deficiency does not bar the Internal Revenue Service from asserting additional deficiencies pursuant to its statutory rights.

A final point is raised as to the fact that the statute of limitations is a disfavored defense; and therefore, this Court should be reticent to apply it as a bar to a taxpayer's suit on the merits. This issue was also raised in the *Rosenman* case and Mr. Justice Frankfurter observed that the taxpayer, while denied his day in court under some circumstances, may also benefit from the commencing of the period of limitations. Rosenman v. United States, 323 U.S. at 663, 65 S.Ct. 536. Thus our finding of payment on remittance in the instant case works in the taxpayer's favor with regard to the running of interest whenever it works against him by commencing the period of limitations. Section 6611(b) (2) of the Internal Revenue Code of 1954, 26 U.S.C. § 6611(b) (2) (1964); Fortugno v. Commissioner of Internal Revenue, 353 F.2d 429 (3d Cir. 1965); Mertens, Laws of Federal Income Taxation § 58.44, Vol. 10 (1964 ed.). In addition, the commencing of the period of limitations with the date of remittance seems particularly fair, where, as here, the taxpayer is more likely to be apprised of the significance of that date as the day of payment than some indeterminate time in the future when his payment is assessed.

We conclude that the Appellant paid the requisite tax for purposes of the period of limitations on February 7, 1963, the date the remittance was received by the Government. A claim brought on February 9, 1965, more than two years later, is barred by statute. 26 U.S.C. §§ 6511, 7422. Therefore, we do not reach Appellant's claims of error on the substantive merits of this action. The judgment of the District Court dismissing the action is affirmed.