**Solomon BLATT, Jr., as Executor of the Estate of Solomon Blatt, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 2:92–3563.

United States District Court,
W.D. North Carolina,
Charleston Division.

Aug. 12, 1993.

Thomas McCutchen and William Taylor, Columbia, SC, for plaintiff.

Ann Reid, Washington, DC, for defendant.

### MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

The Plaintiff has brought suit seeking a refund from the Internal Revenue Service ("IRS") of $68,782.23 plus interest from August 13, 1987 plus reimbursement of litigation costs and administrative costs under Internal Revenue Code ("IRC") Sec. 7430.

The Defendant contends that this Court lacks subject matter jurisdiction in that Plaintiff failed to timely file a claim for refund pursuant to 26 U.S.C. § 6511(b).

### I. FACTS

1. Solomon Blatt died testate on May 14, 1986 a resident of Barnwell County, South Carolina.

2. The Plaintiff was appointed and qualified as Executor of the Estate of Solomon Blatt.

3. The Estate's U.S. Fiduciary Income Tax Return for the period beginning May 14, 1986 and ending April 30, 1987 was due to be filed on August 15, 1987.

4. On August 13, 1987, the Executor wrote a letter request for Extension of Time to file an estate tax return[1] until November 15, 1987. The request was denied. The application for extension was accompanied by two checks, one check in the amount of $155,-000.00 and was marked "Paid Internal Revenue Service for Fiduciary returns for Solomon Blatt, Sr., deceased ssn # 249–62–9166".

5. According to Paragraph 7 of the Complaint:

7. The Estate transmitted $155,000 toward the fiduciary income taxes on August 13, 1987, no return being filed at that time.

The IRS treated the $155,000.00 as a payment pursuant to extension of time to file Form 1041 (Declaration of Patricia Crater, Advisor/Reviewer in the Special Procedures Function of the Office of District Director IRS, Atlanta, Georgia.) According to her deposition this was entered on the computer as a credit. (Crater Depo. p. 57, lines 3–6).

6. The Estate's U.S. Fiduciary Income Tax Return for the period beginning May 14, 1986 and ending April 30, 1987 was filed August 8, 1988 indicating on Line 34 "Federal Income Tax: previously paid $155,000." Line 37 of that return indicated an overpayment of $49,033.38. The IRS issued a refund of income taxes to the estate on September 26, 1988 in the amount of $49,517.99.

7. An amended U.S. Fiduciary Income Tax Return was filed July 30, 1991 which indicated on Line 34: Federal Income Tax Previously Paid $105,966.62 and on Line 37 an overpayment of the income taxes in the amount of $68,782.23 for the period ending April 30, 1987.

---

1. The letter did not request an extension of time to file an income tax return.

8. The IRS on February 3, 1992 notified the Plaintiff that a refund of $68,782.23 had been allowed. Then on April 7, 1992, the IRS reversed itself and issued a letter disallowing the refund.

9. In his second cause of action, the Plaintiff contends that the $155,000 "... transmitted on August 13, 1987 was a deposit and not a payment of tax since it was "transmitted" before the U.S. Fiduciary Income Tax Return had been filed and therefore could not be a payment of tax because the amount of the tax due was unknown at that time." The Plaintiff demands a refund of $68,782.23, plus interest as well as reimbursement of litigation costs and administrative costs under IRC Section 7430.

## MOTION TO DISMISS TREATED AS MOTION FOR SUMMARY JUDGMENT

■■■ This motion comes before the Court styled as a motion to dismiss. According to Moore's Federal Practice,

It is left to the trial court whether or not to receive matters outside the pleadings on a Rule 12(b)(6) motion....

If matters outside the pleadings are received and relied on by the court, the motion must be treated as a motion for summary judgment and· the court must notify the parties and otherwise comply with the procedural requirements of Rule 56. 2A Moore's Federal Practice ¶ 12.-09[3].

The Court does not believe a hearing is necessary in this case. Both parties to this action have supplied the Court with briefs and affidavits, declarations, correspondence, copies of tax returns, and other documents which they intend the Court to rely upon. Additionally, Plaintiff has furnished the Court with a copy of depositions which Plaintiff intends the Court to reply upon. Therefore, the Court concludes both parties consent to the Court treating the instant motion as one for summary judgment under Rule 56.

Federal Rules of Civil Procedure 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (West 1993).

Summary Judgment must be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who must point out specific facts which create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion, district courts must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds could recognize as real factual disputes." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

■■■ Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence from the entire record could not lead a rational fact finder to rule for the non-moving party.

*Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Celotex Corp.* 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (1986). Accordingly, "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. That is, " 'in every case, before evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' " *Id.* at 251, 106 S.Ct. at 2511, *quoting, Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872).

## DISCUSSION

Title 26, Section 6511(a), (b)(1) and (2) provides:

**§ 6511. Limitations on credit or refund (a) Period of limitation on filing claim.**—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

**(b) Limitation on allowance of credits and refunds.**—

**(1) Filing of claim within prescribed period.**—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

**(2) Limit on amount of credit or refund.**—

**(A) Limit where claim filed within 3-year period.**—If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

■ The Plaintiff filed the amended Fiduciary Income Tax Return on July 30, 1991 claiming an overpayment of tax in the amount of $68,782.23. The Fiduciary Income Tax Return for the period ending April 30, 1987 was filed August 8, 1988. Thus, the amended return was filed within three years as required by Section 6511(a) for a claim for refund. However, payment of the $155,000 toward the income tax due was made on August 13, 1987. The amended return filed July 30, 1991 claiming an overpayment of tax was not filed until almost four years after the payment of the $155,000. The filing of an amended return reflecting an overpayment of tax constitutes a claim for refund. Treas. Reg. Sec. 301.6402–3(b)(4). Accordingly the claim was timely.

However, § 6511(b)(2)(A) provides that "... (a) the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim equal to 3 years plus the period of any extension of time for filing the return...."

The United States does not have a record of any request for an extension of time. In any event, no extension was given. (Memo. of Law in Support of Motion to Dismiss P. 2, fn. 1).

■ Thus, only payments made within three years prior to filing of the amended Fiduciary Income Tax Return would come within the provision of § 6511(b)(2)(A). Apparently there were no payments made with-

in that period [2], and therefore the Plaintiff is not entitled to a refund.

The Plaintiff contends that the $155,000 was not a payment but a deposit. Section 6513(a) and (b)(2) provides in pertinent part:

(a) ... For purposes of section 6511(b)(2) and (c) and section 6512, payment of any portion of the tax made before the last day prescribed for the payment of the tax shall be considered made on such last day. For purposes of this subsection, the last day prescribed for filing the return or paying the tax shall be determined without regard to any extension of time granted the taxpayer and without regard to any election to pay the tax in installments.

(b) **Prepaid income tax.**—For purposes of section 6511 or 6512—

(1) ...

(2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

Therefore, if the $155,000 was a payment and not a deposit, as claimed by the Plaintiff, the payment was deemed made on the last day prescribed for the payment of the tax or the filing of the return without regard to any election to pay the tax in installments and without regard to any extension of the time for the payment of the tax or for filing the return. The last day prescribed for the payment of the tax or the filing of the return was August 15, 1987, regardless of any extensions.

██ The only question is: Was the $155,000 "transmitted ... toward the fiduciary income taxes on August 13, 1987 a 'deposit' as contended by the Plaintiff, or was it a payment of the tax?"

The Plaintiff argues that *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945) is authority for the proposition that advances of estimated taxes are not considered by the Government as tax payments but are held as a deposit made in the

nature of a cash bond for the payment of taxes thereafter found to be due. (Memorandum of Law in Opposition to Defendant's Motion to Dismiss, p. 7).

*Rosenman* was concerned with Title 26, Section 910 (1939) now section 6511(a) which limits the time in which a taxpayer may file a claim for refund. In this case, however, we are concerned with Title 26, Section 6511(b)(2)(A) which assumes the claim was timely filed (which it was in this case) but limits the claim for refund to a portion of the tax paid to the portion paid within the three years immediately preceding the filing of the claim. Thus, the question is whether the $155,000.00 transmitted by the taxpayer on August 13, 1987 was a "deposit" as contended by the Plaintiff or a "payment" as contended by the Defendant.

In *Ewing v. U.S.*, 914 F.2d 499 (4th Cir. 1990), the court said at p. 503:

... *Rosenman* does not foreclose the possibility that a remittance made prior to assessment can be a payment of tax. *Ameel v. United States*, 426 F.2d 1270 (6th Cir.1970); *Fortugno v. Commissioner*, 353 F.2d 429 (3d Cir.1965), *cert. dismissed*, 385 U.S. 954, 87 S.Ct. 337, 17 L.Ed.2d 302 (1966); *Charles Leich & Co. v. United States*, 329 F.2d 649, 165 Ct.Cl. 127 (1964); *Hill v. United States*, 263 F.2d 885 (3d Cir.1959); *Rose v. United States*, 256 F.2d 223 (3d Cir.1958); *Lewyt Corp. Commissioner*, 215 F.2d 518 (2d Cir.1954), *aff'd in part and rev'd in part on other grounds*, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955). The *Ameel* court summarized these holdings as to what constitutes "payment":

(1) a remittance is not per se "payment" of the tax; (2) a remittance that does not satisfy an asserted tax liability should not be treated as the "payment" of a tax; and (3) *an essential factor in "payment" before assessment is the satisfaction or discharge of what the taxpayer deems a liability.* (Emphasis added).

---

**2.** The Fiduciary Income Tax Return filed on August 8, 1988 showed the $155,000 previously

paid and an overpayment of $49,033.38 which was refunded by the Government.

426 F.2d at 1273 (quoting 10 J. Mertens, *Law of Federal Income Taxation* § 58.27 at 79 (1964)).

These cases (and the dicta in *Ford* [618 F.2d 357] ) reason that, for purposes of deciding whether a remittance was a payment of tax, formal assessment is only one factor to be considered. Other factors deemed relevant have included when the tax liability is defined, the taxpayer's intent in remitting the money, and how the IRS treats the remittance upon receipt. In our view, the rule that tax liability is not premised on a *per se* requirement of previous assessment is the better reasoned one and represents the clear weight of authority.

*Ewing* at p. 504 further stated:

We are persuaded by the views expressed in *Hill, Ford, Fortugno, Lewyt,* and *Ameel* (which are supported by our reading of *Rosenman* ), and by the language of 26 U.S.C. § 6501(a) that a payment results from the remittance by a taxpayer *concomitant with the recognition of a tax obligation* whether by filing with a return, resolution of a dispute by an agreement, as in this case, *or otherwise.* (Emphasis added).

The Plaintiff in an affidavit filed with his Memorandum of Law in Opposition to Defendant's Motion to Dismiss stated in paragraph 6:

6. I talked with my accountant and we agreed that we would make substantial deposits on both accounts which I felt would cover the *total amounts due* and as it turned out we actually remitted only approximately $50,000.00 less than the returns revealed was due. I talked with my accountant about how much I should forward to the IRS. I had no CPA or tax attorney representing the estate at that time. I had no idea what the estate *would owe in estate or fiduciary income taxes, but I wanted to make a good faith showing in the amounts I remitted. I believed, based on the settlement of the law firm partnership interest that most of the tax would be owed on the fiduciary return, so I decided to send $100,000 for the estate tax return and $150,000 to the fiduciary return.* As stated above, I had already remitted $10,000 toward the estate tax return so I decided to send half of that amount or $5,000 with the fiduciary return for a total of $155,000.00. (Emphasis added).

In the same affidavit, paragraph 10, he stated:

10. It was my intention that these checks were to serve as deposits until the estate and fiduciary tax returns were prepared and until I received some indication of what the Estate owed in estate and fiduciary income taxes.

Thus, even though the Plaintiff's intention was to make a deposit, he made the remittance in the words of *Ewing* "concomitant with the recognition of a tax obligation." Therefore, the Court concludes that the $155,000.00 was a payment under the statutes and case law.

*Weigand v. United States,* 760 F.2d 1072, 1074 (10th Cir.1985) held:

The taxpayers seek to avoid the application of section 6513, however, by claiming that their April 15, 1976 payment was not a payment but a deposit citing *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1944). We rejected that claim on virtually identical facts in *Miller,* and see no reason to accept it now. *Miller,* 315 F.2d [354] at 358. While the estimated taxes paid in *Miller* were paid during the tax year under a different provision of the tax code than that pursuant to which these taxpayers made their estimated tax payment, *we find that section 6513 applies to any estimated tax payment ....* (Emphasis added.)

In the case before the Court, the remittance by the Plaintiff of $155,000 carried the legend: *"Paid* Internal Revenue Service for Solomon Blatt, Sr., deceased." (Emphasis added). The Fiduciary Income Tax Return filed by the Plaintiff August 8, 1988 indicated on Line 34 "Federal Income Tax Previously *Paid* $155,000." (Emphasis added). Line 37 of that return indicated an overpayment of $49,033.38. (This was refunded to Plaintiff by the IRS.)

The amended Fiduciary Income Tax Return filed by the Plaintiff July 30, 1991 on Line 34 indicated $105,996.62, which is the $155,000 less the $49,033.38 previously refunded by the IRS. That amended return indicated the $68,782.23 "overpayment" which is the subject of this lawsuit.

The IRS treated the remittance of $155,-000 as a payment (Finding of Fact No. 5).

The Court concludes that the $155,000 was a payment of what the Plaintiff anticipated would cover the amount due on the fiduciary income tax return. It was also treated as a payment by the IRS. The Court concludes it was a payment and not a deposit and that therefore the claim for a refund by the Plaintiff was for a portion of the tax paid more than three years preceding the filing of the claim.

### Mitigation and Equitable Recoupment

Paragraph 12 of the Plaintiff's complaint states:

12. The Plaintiff contends that he is entitled to a refund of $68,782.23 as indicated on the amended U.S. Fiduciary Income Tax Return plus interest from August 13, 1987 under the mitigation provisions of Code §§ 1311–1314 and under the doctrine of equitable recoupment because the Plaintiff could not have filed the amended U.S. Fiduciary Income Tax Return until the Internal Revenue Service had completed its audit of the U.S. Estate Tax Return.

In Longiotti v. U.S., 819 F.2d 65, 68 (4th Cir.1987) the Fourth Circuit held:

Mitigation is permitted when three elements are present: 1) there must be "a determination" of tax liability as defined in 26 U.S.C. § 1313(a)(1)–(4); 2) the determination must fall within one of the circumstances of adjustment described in 26 U.S.C. § 1312(1)–(7); and 3) depending on which circumstance of adjustment is found, either an inconsistent position must be maintained by the party against whom mitigation will operate, 26 U.S.C. § 1311(b)(1), or the correction of the error must not have been barred at the time the party for whom mitigation will operate first maintained its position, 26 U.S.C. § 1311(b)(2).

The Plaintiff's claim simply does not meet any of those requirements.

As to equitable recoupment, the Plaintiff is again barred by lack of jurisdiction because the statute of limitations has expired.

In U.S. v. Dalm, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990), the Supreme Court held:

Under settled principles of sovereign immunity, "the United States, as sovereign, 'is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" (citing cases). A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms. (citing cases). "[A]lthough we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended.'" (citing cases). (waivers of sovereign immunity by Congress "cannot be implied but must be unequivocally expressed").

As we have determined, our previous equitable recoupment cases have not suspended rules of jurisdiction and so have not deviated from these principles. We likewise refuse Dalm's invitation to do so here.

█ Tax cases do not lend themselves to an equitable solution. The Tax Code and regulations are technical and must be interpreted accordingly, like a game which must be played strictly in accordance with the rules. Ewing v. U.S., 914 F.2d 499, 501 (4th Cir.1990).

This Court regrets that the Plaintiff here has not met the technical requirements of the Code and therefore must lose. As arbitrary as this may appear, this decision is in conformity with the statute. To hold otherwise would seriously undermine the administration of the tax laws.

### CONCLUSION

This Court lacks subject matter jurisdiction because the Plaintiff's action is barred

by the Internal Revenue Code § 6511(b)(2)(A) and has failed to state a claim on which relief may be granted either under the doctrine of mitigation or equitable recoupment.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted which the Court has treated as a motion for summary judgment is *GRANTED* and the Plaintiff's action will be *DISMISSED.* A judgment dismissing the action will be filed simultaneously with this Memorandum of Decision and Order.

### *JUDGMENT*

In accordance with the Memorandum of Decision and Order filed contemporaneously with this Judgment,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Defendant's Motion to Dismiss, which the Court has considered to be a Motion for Summary Judgment as set out in the Memorandum of Decision, is *GRANTED,* and the Plaintiff's action is *DISMISSED WITH PREJUDICE.*

Each party shall pay its own costs.