Andrew C. GOLDMAN, Plaintiff,

v.

**R.E. TURNER, Defendant.**

No. 93 Civ. 7725 (CLB).

United States District Court,
S.D. New York.

July 28, 1994.

Neal Comer, Comer, Bress & Boynton, White Plains, NY, for plaintiff.

David Dunn, Davis, Scott, Weber & Edwards, PC, New York City, John Dalton, Troutman, Sanders, Atlanta, GA, for defendant.

*MEMORANDUM & ORDER*

BRIEANT, District Judge.

By motion in this diversity case heard by the Court on February 4, 1994, and fully submitted for decision on February 15, 1994, defendant R.E. Turner, also known as Ted Turner, moved for summary judgment in his favor on the sole ground that the Statute of Limitations has expired. This action was filed in the Supreme Court of the State of New York, County of Westchester on September 13, 1993, and removed to this Court on November 10, 1993.

Plaintiff Andrew C. Goldman is a resident of Scarsdale, in this district. He was described at the oral argument as a business consultant. Defendant resides in Georgia and is, among other things, the principal, and sole shareholder of Turner Enterprises, Inc., which in turn controls the Turner Broadcasting System.

The complaint alleges that for good and valuable consideration from plaintiff Goldman, Mr. Turner agreed in writing as follows:

Letterhead of:

Turner
Communications Corporation
1015 West Peachtree St. NW
Atlanta, Georgia 33309

R.E. Turner
Chairman of the Board

(404) 873–7017

September 27, 1978

Mr. Andy Goldman
48 Whistler Road
Scarsdale, New York 10583

Dear Andy:

This is to advise you of when I personally have a net worth of $400,000,000, which I anticipate will be in about four (4) years, I will pay in cashier's check to you the sum

of $1,000,000, plus any increases for inflation according to the Consumers Index from October 1, 1978.

If you should be among the departed, I will pay the sum to your estate.

Best personal regards,

/s/ R.E. Turner

R.E. TURNER

RET/d

By his amended answer, docketed December 9, 1993, defendant Turner denied liability, but at the hearing it developed that he does not contest the genuineness of the letter sued on, nor the validity of his autograph signature thereon. Affirmative defenses were asserted based on the Statute of Limitations, the Doctrine of Laches, Failure of Consideration, and that plaintiff's claims, if any, are "barred by the doctrine against the enforcement of illegal contracts" and that plaintiff's claims, if any, are barred by the doctrine of unclean hands, and he lacks standing to sue. We are not told how the contract is illegal, or why plaintiff is barred by unclean hands, or lacks standing.

The Statute of Limitations applicable is the six year period provided in New York C.P.L.R. § 213, and began to run from the date of breach. Since the obligation to pay depends on the happening of a contingent future event, Mr. Turner becoming worth 400 million dollars, the Statute of Limitations began to run when that condition was fulfilled.

Defendant has presented substantial unrefuted documentation establishing that his personal net worth exceeded $400,000,000 perhaps in 1983 or 1984, and in any event long prior to September 13, 1987, the date six years before the commencement of this action. For example, in October 1984, the "Forbes 400 List" published in *Forbes Magazine* reported Robert Edward Turner, III as "worth well over $400,000,000". Defendant has submitted copies of other contemporaneous news clippings which suggest that he has led a life of some public prominence and that the extent of his financial success has been highly publicized. In 1985 he initiated a bid to acquire CBS, Inc. for Three Billion Dollars, and his wholly owned business has been noted for its successful growth and diversification. This success, as well as his America's Cup defense victory in 1977 and a public lifestyle, have been widely reported for many years.

Were this not evidence enough, Mr. Goldman conceded on his deposition that in late 1984, after reading the article in *Forbes Magazine, supra,* he had written a letter to Mr. Turner congratulating him on achieving a net worth of $400,000,000. While it is possible that Turner's net worth might have dropped below $400,000,000 from time to time during the intervening period since 1984, the letter agreement must be read in accordance with its plain meaning, which is that the promise to pay accrued, and the Statute of Limitations began to run, no later than the first day upon which defendant reached that net worth amount, expiring six years thereafter.

Plaintiff argues that the existence of guaranties by Turner of corporate debt may have reduced his net worth, and that resolution of the motion therefore should await further pretrial discovery. The Court rejects this suggestion, especially in light of plaintiff's own letter of congratulations sent in 1984, which constitutes an admission of fact on the part of plaintiff that defendant was then worth more than $400,000,000, and that plaintiff knew it. Therefore, he was on notice to assert his claim.

There are tantalizing unspoken questions about this puzzling case. The letter is genuine and unambiguous, the obligation seems clear, and immediately after the motion to dismiss this action was heard, Turner was

reported publicly as having given $75,000,000 to charity.[1]

This Court is mindful of the rule that the statute of limitations is a disfavored defense. *Ameel v. United States*, 426 F.2d 1270 (6th Cir.1970). It does not alter the prescribed period, destroy, discharge or pay the debt, but simply bars the remedy. *Hulbert v. Clark*, 128 N.Y. 295, 297, 28 N.E. 638 (1891).

We have studied the matter at length, reminded that for such as J.P. Morgan and William Randolph Hearst, who preceded this defendant in financial and media leadership of the nation, their word was their bond.[2] If the precept has changed since the day of Morgan and Hearst, it may well be our loss as well as the plaintiff's.

The motion is granted. The Clerk shall enter final judgment dismissing the complaint.

SO ORDERED.

---

1. Twenty-five Million Dollars each was given to Brown University; The Citadel College and the McCallie School. *Atlanta Journal & Constitution*, February 7, 1994.

2. As to Morgan, see Satterlee, *J. Pierpont Morgan*, ch. 1X–X at 248–49 (1939). As to Hearst, see W.R. Hearst, Jr., *The Hearsts*, 1991 Houston Chronicle, October 7, 1991 at 1 ("[H]is word is his bond.")