Elbert CROSBY, Administrator of the Estate of Goodwin E. Crosby

v.

UNITED STATES of America.

Civ. A. No. 5:93-CV-307.

United States District Court, D. Vermont.

June 19, 1995.

Paul S. Kulig, Keyser, Crowley, Meub, Layden, Kulig & Sullivan, P.C., Rutland, VT, for plaintiff.

Thomas D. Anderson, Asst. U.S. Atty., Burlington, VT, for defendant.

## FINDINGS OF FACT, OPINION AND ORDER

BILLINGS, Senior District Judge.

Plaintiff Elbert Crosby, Administrator of the Estate of Goodwin E. Crosby ("the Estate"), brings this suit against Defendant United States of America, to recover the $10,000 which the Estate submitted to the Internal Revenue Service ("IRS") when the Estate requested an extension of time to file a 1988 fiduciary tax return. The IRS refuses to refund the $10,000, alleging that the remittance was a payment of tax rather than a deposit against tax liability, and that, as a result, the refund claim is time-barred. The Court held a bench trial on the matter on May 9, 1995.

### BACKGROUND

Goodwin E. Crosby died in an automobile accident on August 13, 1987. His widow, Anne C. Crosby, was appointed Executrix of his estate. Anne Crosby was diagnosed with cancer shortly after her appointment, however, and she died from the illness on April 4, 1988.

On June 27, 1988, Elbert C. Crosby and Donna Bryan, the children of Goodwin E. and Anne Crosby, were appointed replacement Co–Administrators of Goodwin E. Crosby's estate. Co–Administrator Donna Bryan assumed responsibility for preparing the Estate's tax returns.

The Estate's 1988 U.S. Fiduciary Income Tax Return ("the 1988 return") was due on April 17, 1989. At that time, however, the Co–Administrators could not file the 1988 return because they were unable to locate the appropriate financial records. Consequently, on April 17, 1989, the Co–Administrators filed an Application for Extension of Time (IRS Form No. 2758) requesting that the Estate have until August 19, 1989 to file the 1988 return.

Along with the Application for Extension of Time, the Co–Administrators submitted to the IRS a $10,000 check for use as a deposit, or cash bond, against any tax assessment or deficiency that might be determined in the future. By submitting the $10,000, the Co–Administrators' intended to mitigate any penalties or interest that might accrue in the event that the Estate had a 1988 tax liability, and they expected that the amount deposited would be held as an undesignated remittance. After receiving the check on April 21, 1989, the IRS placed the money in an account entitled "Goodwin E. Crosby Estate, Elbert C. Crosby and Donna C. Bryan, Co–Administrators."

On May 11, 1989, the IRS granted the Estate's Application for Extension of Time. Thomas H. Quinn, the Director of the IRS's Andover, Massachusetts, Regional Service Center, signed and executed the Estate's Form 2758, approving the Estate's request to extend the filing deadline until August 15, 1989. However, after Quinn executed his approval of the extension, the IRS changed the extension date on the form by circling the August 15, 1989 extension date that the Co–Administrators had written and writing "6/5/89" in the space next to it. Line 5(C) of the Form directed the taxpayer to "(i)nclude your payment with this form or deposit with F.T.D. coupon, if required." However, the completed Form 2758 that the Estate submitted with the $10,000 did not indicate whether the money was a payment or a deposit.

The Estate filed its 1988 U.S. Fiduciary Income Tax Return on February 11, 1993. In the return, the Estate reported that its actual 1988 tax liability was zero, and therefore requested a refund of the $10,000 it had submitted in 1989 with the Application For Extension of Time. On March 3, 1993, Co–Administrator Donna C. Bryan died.

In a letter dated June 21, 1993, IRS Director Quinn denied the refund request as untimely because he found that the Estate had not requested a refund of the $10,000 within three years after the date that the money had been submitted. On July 12, 1993, less than one month after denying the refund request, the IRS transferred the $10,000 from the Crosby Estate Account to the IRS's general ledger account. On October 7, 1993, Plaintiff filed this action seeking a refund of the $10,000 that the Estate submitted in 1989.

At trial, the agent testifying on behalf of the IRS stated that the Agency never designated the $10,000 as a payment or a deposit until after the three-year limitation period had expired, at which time the Agency treated it as a payment. The IRS agent also admitted at trial that the separate Crosby Estate account was in the nature of an escrow account, to be held as a cash deposit against any tax liability, deficiency, or assessment that might come due in the future. At no time has there ever been any tax liability, deficiency, assessment or audit in connection with the 1988 fiduciary tax return, and the tax return itself showed no tax due.

### DISCUSSION

The time limitations on credits and refunds for federal tax purposes are governed by section 6511 of the United States Code. According to section 6511(a), a claim for credit or refund of an overpayment to the Internal Revenue Service must be made within three years from the time the return was filed.[1]

---

1. The statute provides, in pertinent part:

Claim for credit or refund of an overpayment

As the parties have agreed, Plaintiff satisfied this time limit because, despite the lateness of the return itself, it was filed simultaneously with the request for a refund.[2] Since the refund claim and the tax return were both filed on February 11, 1993, the refund claim was clearly within the three year limitation period allowed by section 6511(a).

■ The limit on the amount of credit or refund that a taxpayer may receive for a timely filed refund claim is governed by § 6511(b)(2)(A). The relevant portion of that section provides that:

> If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

Thus, the amount of credit or refund that may be claimed is limited to the amount of tax paid within the 3 years immediately preceding the filing of the claim, plus any extension period that has been granted by the IRS. *See, Willis v. Department of the Treasury, IRS*, 848 F.Supp. 1127–28 (S.D.N.Y. 1994); *Blatt v. United States*, 830 F.Supp. 882–85 (W.D.N.C.1993); *Mills v. United States*, 805 F.Supp. 448–50 (E.D.Tex.1992). However, the limitation period established under Section 6511(b)(2)(A) applies only to tax payments, and therefore does not serve as a time bar to remittances characterized as deposits. *Rosenman v. United States*, 323 U.S. 658, 662, 65 S.Ct. 536, 538, 89 L.Ed. 535 (1945).

■ As the preceding discussion indicates, the issue here is whether the $10,000 that the Estate remitted in 1989 was a payment or a deposit. If, as Plaintiff contends, the submission was a deposit, then the three year limitations period does not apply and the Estate is entitled to the refund it seeks. If, as the Government maintains, the remittance was a payment, then the limitations period does not apply and Plaintiff's refund claim is time-barred.[3]

Although it is clear that the limitations period contained in section 6511(b)(2)(A) applies to tax payments but not to deposits, *Rosenman*, 323 U.S. at 662, 65 S.Ct. at 538, it is also apparent that the Second Circuit has not yet adopted a test for distinguishing between payments and deposits under section 6511(b)(2)(A). Several of the Circuit Courts of Appeal have adopted a per se rule that there can be no payment of taxes until tax liability has been assessed. *See, e.g., Ford v. United States*, 618 F.2d 357, 361 (5th Cir. 1980); *Plankinton v. United States*, 267 F.2d 278, 280 (7th Cir.1959); *United States v. Dubuque Packing Co.*, 233 F.2d 453, 460–61 (8th Cir.1956). We have previously rejected that approach, however, because it is too rigid to account for the fact that many remittances made prior to assessment are intended as payments of tax liability, while others are intended to function as deposits pending an assessment of future tax liability. *See Crosby v. United States*, 889 F.Supp. 143, 145–146 (D.Vt.1995).

■ Instead, we agree with those Circuits which have held that whether a remittance is

---

of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed.... 26 U.S.C. § 6511(a).

**2.** According to the Treasury Department's regulations, the filing of a tax return identifying an overpayment "constitutes a claim for refund ... within the meaning of 6402 and 6511 ... For purposes of § 6511, such claim [for a refund] shall be considered as filed on the date on which such return ... is considered as filed." 26 C.F.R. § 301.6402–3(a)(5). Thus the Estate's claim for a refund of the $10,000 is deemed filed on February 11, 1993, the same day that the 1989 return was filed.

**3.** The Estate's timely return claim was filed on February 11, 1993. Thus, under section 6511(b), the Estate would be entitled to a refund of any taxes paid during the three years immediately preceding the filing (February 11, 1990 through February 11, 1993), plus any extensions. Here, the IRS granted the Estate a four month extension. Therefore, the Estate would be entitled to a refund of any taxes paid between October 11, 1989 and February 11, 1993. Consequently, if the $10,000 submitted by the Estate in April, 1989, was a payment, then the refund claim would fall outside the limitations period and be time-barred.

a payment or a deposit depends on the unique facts and circumstances of each case. *See, e.g., Ewing v. United States,* 914 F.2d 499, 503 (4th Cir.1990); *Ameel v. United States,* 426 F.2d 1270, 1273 (6th Cir.1970). The Court believes that this is the better mode of analysis because it is sufficiently flexible to take into account all relevant factors in these fact-driven cases. In addition, the Court finds that if the Second Circuit were presented with the question, it would be more likely to adopt this approach and reject a rigid per se rule.[4] We will therefore employ that analysis in the case at bar.

Courts that have employed an "individual facts and circumstances" analysis for distinguishing payments from deposits under section 6511(b)(2)(A) have employed a three-factor test that considers "(1) when the tax liability is defined; (2) the taxpayer's intent in remitting the money; and (3) how the Internal Revenue Service treats the remittance upon receipt." *Ewing,* 914 F.2d at 503. Examination of these factors in the present case clearly indicates that the Estate's $10,000 remittance was a deposit rather than a payment.

First, we note that the Estate's 1988 tax liability had not yet been defined when it remitted the $10,000. There had been neither a return, an audit, nor a notice of deficiency assessing the Estate's liability.[5] The fact that an assessment had not yet been made of the Estate's tax liability suggests that the $10,000 was a deposit rather than a

payment. See *Ewing,* 914 F.2d at 504; *Ameel,* 426 F.2d at 1273.

In addition, the manner in which the IRS treated the $10,000 strongly weighs in favor of the argument that the money was a deposit. When the IRS segregates a remittance in a separate account, as opposed to depositing it in a general funds account, it tends to show that the IRS is treating the remittance as a deposit rather than a payment. *Rosenman,* 323 U.S. at 662, 65 S.Ct. at 538; *Risman,* 100 T.C. at 198. In the present case, the IRS placed the Estate's $10,000 remittance in a separate account entitled "Goodwin E. Crosby Estate, Elbert C. Crosby and Donna C. Bryan, Co–Administrators," and the money remained there until the IRS transferred it to the IRS general ledger account on July 12, 1993. Furthermore, an IRS agent admitted at trial that the separate Crosby Estate account was in the nature of an escrow account, for use as a cash deposit against any potential future tax liability, deficiency, or assessment. Thus, as evidenced by its conduct and by the admissions of its duly designated agent, the IRS treated the Estate's remittance as a deposit rather than as a payment.

Finally, the Court attributes substantial weight to the credible trial testimony of Co–Administrator Elbert C. Crosby.[6] Mr. Crosby testified that by remitting the $10,000 the Estate intended to mitigate any penalties and interest that might accrue if it was subsequently determined that the Estate had a

---

**4.** The Second Circuit has indicated, for example, that it does "not read *Rosenman* to foreclose treating as a tax payment any remittance made prior to assessment." *Lewyt Corp. v. Commissioner,* 215 F.2d 518, 522 (2d Cir.1954). This does not resolve the question of the proper test under section 6511(b)(2)(A), however, because the quoted passage from Judge Harlan was dicta, and because the *Lewyt* case construed an entirely different section of the Code. Nevertheless, the case did involve a disputed submission of money to the IRS, and the *Lewyt* court did consider, among other things, whether a liability existed before the remittance, what the taxpayer intended by submitting the money, and how the IRS treated the funds after receiving them. *Id.* at 522–23. Thus, the *Lewyt* court's analytical approach provides support for our conclusion that the Second Circuit would be more likely to adopt a test that considered all the relevant facts and circumstances surrounding a remittance in order

to determine whether it was a payment or a deposit.

**5.** Three ways that assessments can commonly occur are: (1) automatically, after a return is filed showing a tax liability; (2) from a notice of deficiency; or (3) after an audit. *See, e.g., Risman v. Commissioner,* 100 T.C. 191, 197, 1993 WL 72856 (1993); *Ameel,* 426 F.2d at 1273; *Ewing,* 914 F.2d at 503–04.

**6.** The Court agrees with those courts and commentators that place significant weight on the intent of the taxpayer when resolving disputes over the nature of a cash remittance. *See, e.g., Rosenman,* 323 U.S. at 661–62, 65 S.Ct. at 537–38; *Ewing,* 914 at 503–04; *Ameel,* 426 F.2d at 1273; *Risman,* 100 T.C. at 197; *Fortugno v. Commissioner,* 353 F.2d 429, 435 (3d Cir.1965); *Gabelman v. Commissioner,* 66 T.C.M. (CCH) 1581, 1993 WL 516225 (1993), at 6–9.

tax liability. Thus, the taxpayer's intent also suggests that the remittance was a deposit.

As the preceding discussion indicates, analysis of each of the relevant analytical factors establishes that the Estate's $10,000 remittance was a deposit rather than a payment. The Estate intended that the remittance be a deposit, the IRS treated it as one, and there had not yet been an assessment of any kind. In light of these facts, the Court finds that the $10,000 remittance made by the Crosby Estate on April 17, 1989, was a deposit. Consequently, the Court concludes that the Crosby Estate is entitled to a full refund of the $10,000, together with any and all interest that has accrued on that sum since June 21, 1993, the date on which the IRS denied the Estate's request for a refund.

### CONCLUSION AND ORDER

**IT IS HEREBY ORDERED** that the Plaintiff shall recover from the United States of America the sum of $10,000, together with any and all interest, computed at the applicable federal rate, that has accrued between June 21, 1993, and the date upon which the United States makes payment pursuant to this Order.

SO ORDERED.