Elbert CROSBY, Administrator of the
Estate of Goodwin E. Crosby

v.

UNITED STATES of America.

Civ. A. No. 5:93–CV–307.

United States District Court,
D. Vermont.

Feb. 14, 1995.

Paul S. Kulig, Keyser, Crowley, Meub, Layden, Kulig & Sullivan, P.C., Rutland, VT, for plaintiff.

Thomas D. Anderson, Asst. U.S. Atty., Burlington, VT, for defendant.

## *OPINION–ORDER*

BILLINGS, Senior District Judge.

Cross motions for summary judgment and a motion to dismiss bring this matter to the Court's attention. On October 31, 1994, Defendant United States of America moved to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment. On December 9, 1994, Plaintiff Elbert Crosby, Administrator of the Estate of Goodwin E. Crosby ("the Estate"), filed his own Motion For Summary Judgment simultaneously with his response to the United States' Motion to Dismiss. The Court will address each motion in turn.

## Factual Background

Goodwin E. Crosby died in an automobile accident on August 13, 1987. His surviving wife, Anne C. Crosby, was appointed Executrix of his estate. Anne Crosby was diagnosed with cancer shortly after her appointment, however, and she died from the illness on April 4, 1988.

On June 27, 1988, Elbert C. Crosby and Donna Bryan, the children of Goodwin E. and Anne Crosby, were appointed replacement administrators of Goodwin E. Crosby's estate. Co–Administrator Donna Bryan assumed responsibility for preparing the Estate's tax returns.

On April 17, 1989, the Estate filed with the Internal Revenue Service ("the IRS") an Application For Extension of Time to file its 1988 U.S. Fiduciary Income Tax Return. The Estate requested that the filing deadline be extended until August 15, 1989. Along with the extension application, the Estate submitted $10,000. On May 11, 1989, the IRS granted the request for an extension.

The Estate filed its 1988 U.S. Fiduciary Income Tax Return on February 11, 1993. In the return, the Estate reported that its actual 1989 tax liability was zero, and therefore requested a refund of the $10,000 it had submitted in 1989 with the Application For Extension of Time. In a letter dated June 21, 1993, the IRS denied the refund request as untimely. On October 7, 1993, Plaintiff filed this action seeking a refund of the $10,-000 that the Estate submitted in 1989.

In its Motion to Dismiss or For Summary Judgment, the United States continues to maintain that Plaintiff's request for a refund is time-barred. The Government argues that the $10,000 submitted by the Estate in 1989 was an estimated tax payment. Consequently, the Government asserts, Plaintiff is not entitled to a refund because the $10,000 payment was not made during the three year period preceding the claim for a refund, as required by the Internal Revenue Code ("the Code").

Plaintiff counters that the Estate's $10,000 payment to the IRS in 1989 was a "deposit," not a "payment." Because it was a deposit, Plaintiff continues, the 1989 tender is not subject to the three year limitations period that is applicable to payments under the Code.[1] Since subsequent records have revealed that the Estate's actual tax liability for 1989 was zero, Plaintiff concludes, the IRS must refund the entire $10,000 deposit made in 1989.

## Discussion

### I. Motions For Summary Judgment

Summary judgment is appropriate when the Court finds that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The party opposing summary judgment may not rest on its pleading but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view these materials in the light most favorable to the non-movant, drawing all reasonable inferences in the non-movant's favor. *Id.* at 255, 106 S.Ct. at 2513–14.

### A. Limitation on Refunds Under the Code

The time limitations on credits and refunds for federal tax purposes are governed by section 6511 of the United States Code. According to section 6511(a), a claim for credit or refund of an overpayment to the Internal Revenue Service must be made within three

---

1. In the alternative, Plaintiff argues that, even if the three year limitations period does apply, it should be equitably tolled because the delay was caused by the deaths of two successive administrators. The United States disagrees, contending that the equitable tolling doctrine does not apply to tax refund cases, and that, even if it did, it would not apply to the "garden variety claim of excusable neglect" that the Government claims Plaintiff is making here. We need not reach this question, however, because of our conclusion that the distinction between payments and deposits resolves the motions currently before the Court.

years from the time the return was filed.[2] As the parties have agreed, Plaintiff satisfied this time limit because, despite the lateness of the return itself, it was filed simultaneously with the request for a refund.[3] Since the refund claim and the tax return were both filed on February 11, 1993, the refund claim was clearly within the three year limitation period allowed by section 6511(a).

▇▇▇▇ The limit on the amount of credit or refund that a taxpayer may receive for a timely filed refund claim is governed by section 6511(b)(2)(A). The relevant portion of that section provides that:

> If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

Thus, the amount of credit or refund that may be claimed is limited to the amount of tax paid within the three years immediately preceding the filing of the claim, plus any extension period that has been granted by the IRS. *See, e.g., Willis v. Dep't of Treasury, I.R.S.*, 848 F.Supp. 1127, 1128 (S.D.N.Y.1994); *Blatt v. U.S.*, 830 F.Supp. 882, 885 (W.D.S.C.1993); *Mills v. United States*, 805 F.Supp. 448, 450 (E.D.Tex.1992). However, the limitations period established in section 6511(b)(2)(A) applies only to tax payments, and therefore does not serve as a time bar to remittances characterized as deposits. *Rosenman v. United States*, 323 U.S.

658, 662, 65 S.Ct. 536, 538, 89 L.Ed. 535 (1945).

In light of the above discussion, it is clear that this case turns on the status of the $10,000 remittance in 1989. If, as Plaintiff contends, the submission was a deposit, then the three year limitations period does not apply and Plaintiff may be entitled to his refund. If, as the Government maintains, the remittance was a payment, then the limitations period does apply and Plaintiff's refund claim is time-barred.[4] The disputed characterization is obviously material, so we now examine in more detail the nature of the distinction between a payment and a deposit under section 6511(b)(2)(A) in order to determine if there is a genuine dispute that precludes summary judgment at this time.

### B. Payments and Deposits Under Section 6511(b)(2)(A)

▇▇ As indicated earlier, the limitations period contained in section 6511(b)(2)(A) applies to tax payments but not to deposits. *Rosenman*, 323 U.S. at 662, 65 S.Ct. at 538. The critical question, therefore, is whether the $10,000 that the Estate remitted in 1989 was a payment or a deposit.

The Court observes initially that the Second Circuit has not yet formulated a test for distinguishing between payments and deposits under section 6511(b)(2)(A). Plaintiff urges the Court to adopt a per se rule that there can be no payment of taxes until tax liability has been assessed. Several of the Circuit Courts of Appeal have followed a version of this bright-line approach when determining whether a payment has been

---

**2.** The statute provides, in pertinent part:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed....

26 U.S.C. § 6511(a).

**3.** According to the Treasury Department's regulations, the filing of a tax return identifying an overpayment "constitutes a claim for refund ... within the meaning of 6402 and 6511 ... For purposes of § 6511, such claim [for a refund] shall be considered as filed on the date on which such return ... is considered as filed." 26 C.F.R. § 301.6402–3(a)(5). Thus the Estate's claim for a refund of the $10,000 is deemed filed

on February 11, 1993, the same day that the 1989 return was filed.

**4.** The Estate's timely return claim was filed on February 11, 1993. Thus, under section 6511(b), the Estate would be entitled to a refund of any taxes paid during the three years immediately preceding the filing (February 11, 1990 through February 11, 1993), plus any extensions. Here, the IRS granted the Estate a four month extension. Therefore, the Estate would be entitled to a refund of any taxes paid between October 11, 1989 and February 11, 1993. Consequently, if the $10,000 submitted by the Estate in April, 1989, was a payment, then the refund claim would fall outside the limitations period and be time-barred.

made. *See, e.g., Ford v. United States,* 618 F.2d 357, 361 (5th Cir.1980); *Plankinton v. United States,* 267 F.2d 278, 280 (7th Cir. 1959); *United States v. Dubuque Packing Co.,* 233 F.2d 453, 460–61 (8th Cir.1956). The rule is based on two related hypotheses: that a payment is made to extinguish a debt or liability; and that, under the Federal tax system, there is no liability until a tax is assessed. *See, e.g., Ford,* 618 F.2d at 359. Thus, any remittance of funds prior to the assessment of tax liability could not possibly be a payment.

The Court declines to adopt such a rigid analytical approach to cases under section 6511(b)(2)(A).[5] A survey of the cases reveals that many remittances prior to assessment are in fact intended as payments of tax liability, and the IRS has properly treated them as such. *See, e.g., Ewing,* 914 F.2d at 504; *Ameel v. United States,* 426 F.2d 1270, 1273 (6th Cir.1970). On the other hand, other remittances have been made to function as deposits pending an assessment of tax liability, and were not meant to be payments at all. *See, e.g., Rosenman,* 323 U.S. at 661–62, 65 S.Ct. at 538–39; *Risman v. Commissioner,* 100 T.C. 191, 197 (1993). Given that these cases appear to depend so heavily on the individual factors unique to each one, and bearing in mind that a federal district court should exercise restraint when the court of appeals has yet to resolve an issue, we do not think it appropriate at this time to adopt a per se rule to distinguish payments from deposits under section 6511(b)(2)(A).

We agree with those Circuits which have held that whether a remittance is a payment or a deposit depends on the unique facts and circumstances of each case. *See, e.g., Ewing,* 914 F.2d at 503; *Ameel,* 426 F.2d at 1273. The Court believes that this is the better mode of analysis because it is sufficiently flexible to take into account all relevant factors in these fact-driven cases. We will therefore take this approach in the case at bar.[6]

Courts that have employed an "individual facts and circumstances" test for distinguishing payments from deposits under section 6511(b)(2)(A) have considered such factors as "(1) when the tax liability is defined; (2) the taxpayer's intent in remitting the money; and (3) how the Internal Revenue Service treats the remittance upon receipt." *Ewing,* 914 F.2d at 503. Examination of these factors in the present case indicates that summary judgment is inappropriate at this time.

The Court initially observes that there is no evidence in the record with respect to how the IRS treated the $10,000 remittance the Estate made in 1989. Since there is no basis for concluding whether the IRS treated the remittance as a deposit or a payment, this factor supports denying summary judgment to both Plaintiff and Defendant.

Secondly, we note that the Estate's 1989 tax liability apparently was undefined when it remitted the $10,000. There had been neither a return, an audit, nor a notice of deficiency assessing the Estate's liability.[7]

---

5. Several courts have similarly declined to hold that a remittance made prior to assessment can never be a payment of tax. *See, Ewing v. United States,* 914 F.2d 499, 503 (4th Cir.1990) (collecting cases). In addition, as the Fourth Circuit observed in *Ewing,* the fact that assessment had not yet occurred was only one of several factors discussed by Justice Frankfurter in *Rosenman;* this "gives weight to the notion that assessment is but one factor in consideration of whether and when a remittance becomes a payment of a valid tax liability." *Id.*

6. It should be noted that the Second Circuit has indicated that it does "not read *Rosenman* to foreclose treating as a tax payment any remittance made prior to assessment." *Lewyt Corp. v. Commissioner,* 215 F.2d 518, 522 (2d Cir.1954). This does not resolve the question of the proper test under section 6511(b)(2)(A), however, be-

cause the quoted passage from Judge Harlan was dicta, and because the *Lewyt* case construed an entirely different section of the Code. Nevertheless, the case did involve a disputed submission of money to the IRS, and the *Lewyt* court did consider, among other things, whether a liability existed before the remittance, what the taxpayer intended by submitting the money, and how the IRS treated the funds after receiving them. *Id.* at 522–23. That analytical approach provides support for our conclusion that a per se rule under section 6511 is inappropriate, and that, instead, a court should consider all the relevant facts and circumstances surrounding a remittance when determining whether it was a payment or a deposit.

7. Three ways that assessments can commonly occur are: (1) automatically, after a return is filed showing a tax liability; (2) from a notice of

As noted earlier, the fact that an assessment had not yet been made of the Estate's tax liability suggests that the $10,000 was a deposit rather than a payment. Because we have declined to adopt a per se rule, however, this factor is relevant but not determinative.

Finally, the Court agrees with those courts and commentators that place significant weight on the intent of the taxpayer when resolving disputes over the nature of a cash remittance. *See, e.g., Rosenman,* 323 U.S. at 661–62, 65 S.Ct. at 538–39; *Ewing,* 914 at 503–04; *Ameel,* 426 F.2d at 1273; *Risman,* 100 T.C. at 197; *Fortugno v. Commissioner,* 353 F.2d 429, 435 (3d Cir.1965); *Gabelman v. Commissioner,* 66 T.C.M. (CCH) 1581 (1993), at 6–9. When deciding whether a remittance was a payment of a tax liability or a deposit on either a potential late penalty or a possible future tax liability, it is rational and appropriate to consider what the taxpayer intended the money to serve as at the time it was delivered.

In the present case, there is simply no evidence in the record indicating the Estate's intent when it remitted the $10,000 to the IRS in 1989. The figure is simply entered on the extension application form with no explanation. It may have been, as Plaintiff maintains, a good faith attempt to mitigate any penalties and interest that might accrue because of the late filing. On the other hand, the United States may be correct when it points out that the Estate must have intended that the remittance would serve as a payment because the Estate entered the figure "$10,000" on the "tentative tax" line of the form. At this stage of the litigation, there is simply not enough evidence in the record to enable the Court to say with any confidence what the Estate intended when it remitted the $10,000 to the IRS in 1989.

In light of the preceding discussion, the Court finds that there is a genuine dispute of material fact with respect to whether the $10,000 submitted to the IRS by the Estate in 1989 constituted a payment or a deposit. The fact that there had not yet been any tax

liability assessed does suggest that the money was a deposit. However, there is insufficient evidence at this time to reach a firm conclusion about the money's status because the record provides no indication as to what the Estate intended by submitting the cash or how the IRS treated it after they received it. Absent further evidence on these latter two points, the Court cannot say as a matter of law that the $10,000 constituted either a payment or a deposit. Consequently, this case presents a genuine dispute of material fact, and neither party is entitled to summary judgment at this time.

### II. Motion to Dismiss

The United States has also moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and Plaintiffs have filed opposition. The Court observes that the parties have raised precisely the same arguments with respect to the Motion to Dismiss that they raised in their Motions For Summary Judgment. Consequently, in light of the conclusions we reached above with respect to the Motions For Summary Judgment, the United States' Motion to Dismiss is hereby DENIED.

### CONCLUSION

Based on the foregoing, Defendant United States of America's Motion to Dismiss or, in the Alternative, For Summary Judgment, is hereby DENIED. The Motion For Summary Judgment filed by Plaintiff Elbert Crosby, Administrator of the Estate of Goodwin E. Crosby, is likewise DENIED.

SO ORDERED.

deficiency; or (3) after an audit. *See, e.g., Risman,* 100 T.C. at 197; *Ameel,* 426 F.2d at 1273;

*Ewing,* 914 F.2d at 503–04.